# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# NEWNAN DIVISION

| | |
|---|---|
| MELISSA BROWN, individually and on behalf of those similarly situated, ) ) ) | |
| Plaintiff, ) ) | Civil Action No. 3:20-cv-00224-TCB |
| v. ) ) | |
| 1888 MILLS, LLC, ) ) | |
| Defendant. ) | |

## FLSA SETTLEMENT AND RELEASE AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between Defendant 1888 Mills, LLC (the "Company") and Plaintiff Melissa Brown (the "Releasor") (collectively, the "Parties") for the complete and final settlement of the claims asserted by Plaintiff in the lawsuit filed against Defendant in the United States District Court for the Northern District of Georgia, Newnan Division alleging willful failure to pay overtime wages in violation of the Fair Labor Standards Act ("FSLA"), captioned *Melissa Brown, individually on behalf of those similarly situated*, *v. 1888 Mills, LLC*, Case No. 3:20-cv-00224-TCB, which is currently proceeding as a conditionally certified collective action (the "Civil Action").

WHEREAS, Plaintiff and the Opt-in Plaintiffs she represents (the "Class"), each of whom is identified individually in Appendix A, filed Consent Forms to join the Litigation, and thereby, agreed to be bound by the terms of any settlement entered into by Plaintiff on behalf of the Class; and

WHEREAS. The Parties desire to resolve the claims asserted in the Litigation by Plaintiff, on behalf of herself and the Class, for alleged violations of the FLSA (the "FLSA Claims);

1

NOW, THEREFORE, the Parties, intending to be legally bound by the terms of this Agreement in exchange for the consideration as set forth herein, agree as follows:

1. **Payment and Consideration:**

A. Within ten (10) calendar days of the full execution of this Agreement by the Parties and the Court's approval of the Settlement Agreement, the Company will pay the Releasor and the Releasor's attorney a total payment of One Hundred Seventy-Eight Thousand Seven Hundred Two Dollars and Forty-One Cents ($178,702.41) (the "Settlement Payment"), such amount to be divided and paid as follows:

(i) Unpaid Overtime and Liquidated Damages: Seventy-One Thousand Four Hundred Dollars ($71,400.00), which is to be distributed and issued to the Class as set forth in Appendix A. Unpaid Overtime shall be reported on an IRS Form W-2 (subject to payroll tax withholding) and Liquidated Damages shall be reported on an IRS Form 1099.

(ii) Attorney's Fees and Costs: One Hundred Seven Thousand Three Hundred Two Dollars and Forty-One Cents ($107,302.41) for attorney's fees and costs, by check made payable and issued to Jim McCabe, The McCabe Law Firm, LLC, 3355 Lenox Road, Suite 750, Atlanta, Georgia 30326, and reported on an IRS Form 1099.

B. The Company will place the amount owed for Unpaid Overtime and Liquidated Damages into a Qualified Settlement Fund (QSF) managed by CPT Group, in addition to amounts required for payment of the Company's share of payroll taxes, which the Company will provide following CPT Group's provision of that information. CPT Group will disburse the funds and issue checks to the Class.

C. Counsel for Releasor is responsible for supplying CPT Group with updated addresses for the Opt-In Plaintiffs.

**2.     Motion to Approve Settlement and Effective Date**

A.     For and in consideration of the payments and benefits specified in paragraph 1, and other good and valuable consideration, Releasor agrees to dismiss with prejudice her Amended Collective Action Complaint that currently is pending in the United States District Court for the Northern District of Georgia, Newnan Division, styled *Melissa Brown, individually on behalf of those similarly situated, v. 1888 Mills, LLC*, Case No. 3:20-cv-00224-TCB.

B.     Following their execution of this Agreement, Releasor and the Company agree to jointly file in the Civil Action the Joint Motion to Approve Settlement Agreement and Dismiss Claims that is attached to this Agreement as Exhibit 1 ("the Joint Motion"), attaching thereto an executed copy of this Agreement to be filed in the public court record. The parties will cooperate and take all necessary steps to effectuate final judicial approval of the Joint Motion.

C.     This Agreement shall become effective and binding upon Releasor upon her execution of the Agreement and shall be irrevocable. The Agreement shall not become effective, however, with respect to the Company, and the Company shall have no obligation to make the payments set forth in paragraph 1, unless and until such date ("the Effective Date") as the Court approves in its entirety the Joint Motion and enters an order approving this Agreement and dismissing the Civil Action with prejudice. If the Court does not grant the Joint Motion or approve this Agreement or dismiss the Civil Action with prejudice for any reason, then this Agreement will not be binding upon the parties and will be null and void.

**3.     Release of Claims:**

By the terms of the Court's Order, adopting this Settlement Agreement, the Class will release any and all claims, whether known or unknown, which the Class now has or may have hereafter, directly or indirectly, personally or in a representative capacity, against the Company that arise out of, concern, or relate to their compensation while they were employed with the Company up through December 31, 2021, including state and federal claims for unpaid minimum wage and overtime compensation, employee and fringe benefits, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

4. **Covenant Not To Sue:**

Unless otherwise prohibited by law, Releasor agrees, covenants, and warrants to the Company that neither Releasor, nor any person, organization, or other entity acting on Releasor's behalf has or will: (a) sue or cause or permit suit against the Releasees upon any claim released by this Agreement; (b) participate in any way in any such suit or proceeding; or (c) execute, seek to impose, collect or recover upon, or otherwise enforce or accept any judgment, decision, award, warranty, or attachment upon any claim released by this Agreement. Unless otherwise prohibited by law, in the event of any claim by an agency or federal or state government or a claim by any person against the Releasees for conduct by the Releasees against Releasor for any conduct arising prior to the effective date of this Agreement, Releasor waives his right to personally recover any monetary amount in any such proceedings, and Releasor further agrees and covenants to return to the Company upon receipt any sums paid to or otherwise received by Releasor pursuant to any such claim.

6. **Non-Admission:**

This Agreement is entered into to compromise and settle the disputed Claims, without any acquiescence, acknowledgement, or agreement by the Company as to the merit of any actions, causes of action, suits, debts, dues, sums of money, accounts, damages, expenses, attorney's fees, costs, punitive damages, penalties, judgments, claims or demands released herein. Neither this Agreement nor any part thereof may be used as an admission of liability.

7. **Successors and Assigns:**

This Agreement shall be binding upon Releasor and Releasor's heirs, executors, administrators, assigns, successors, beneficiaries, employees, and agents, and shall inure to the benefit of the Releasees and their predecessors, successors, and assigns. Releasor represents and warrants that he has not assigned, sold, or otherwise conveyed any claim released herein.

8. **Modification and Severability:**

A. This Agreement may not be altered, amended, modified, or otherwise changed in any respect or manner whatsoever except by a writing duly executed by the Releasor and authorized representative of the Company.

B. In the event a portion of this Agreement is held to be legally invalid by a

competent court of law, the invalid portion shall be stricken and all other obligations shall remain valid and mutually binding on the parties and not be affected thereby.

### 9. **Miscellaneous:**

A. This Agreement is executed by Releasor knowingly and voluntarily and is not based upon any representations or statements of any kind by any person as to the merits, legal liabilities, or value of Releasor's claims. Releasor acknowledges that no promise or inducement has been offered or made except as set forth in this Agreement. Releasor further acknowledges that consideration for this Agreement consists of financial payments and benefits to which Releasor otherwise has no legal entitlement.

B. Releasor acknowledges and agrees that she has had reasonable and sufficient time in which to consider whether or not she wishes to enter into this Agreement, and that her decision to do so is made knowingly, voluntarily, and without coercion. Releasor acknowledges that she has the right and opportunity to consult fully with legal counsel or any other advisor of his choice prior to signing this Agreement, and that Releasor is advised to consult with legal counsel prior to signing this Agreement. In that regard, Releasor acknowledges that, before signing this Agreement, Releasor has read and understands each paragraph herein.

C. Releasor acknowledges that neither the Releasees nor their attorneys make or have made any representation as to the tax consequences, if any, of the provisions of this Agreement. Releasor agrees to pay, and acknowledges that he remains fully and solely liable to pay, all federal, state, and local taxes, if any, which are required by law to be paid with respect to this settlement. The Releasor further agrees to indemnify and hold harmless the Releasees from any claims, demands, deficiencies, levies, assessments, executions, judgments, or recoveries by any government entity against the Company or any of the Releasees for any amounts claimed due on account of this Agreement or pursuant to claims made under any federal or state tax laws and from any costs, expenses, or damages sustained by the Company or any of the Releasees by reason of any such claims, including any amounts paid as taxes, attorneys' fees, deficiencies, levies, assessments, fines, penalties, interest, or otherwise.

E. This Agreement may be executed electronically and in multiple counterparts and all counterparts shall constitute one agreement binding on each of the parties hereto, regardless of whether each party hereto is a signatory to the same

5

counterpart. Electronic, fax, and/or scanned signatures in lieu of original signatures are acceptable.

**MELISSA BROWN**

*/s/ Melissa Brown* (DocuSigned, 1B19F6189434E0...)
Signature

5/10/2023
Date

**1888 MILLS, LLC**

Douglas R. Tingle
Print Name

*/s/ Douglas R. Tingle* (DocuSigned, 7EC5F7E1682A429...)   Vice Chairman
Signature

5/10/2023
Date

6

# Appendix A:

## Calculations of Unpaid Overtime and Liquidated Damages Owed to Individual Class Members

| Name of Employee: | Check for Unpaid Overtime (IRS Form W-2):[1] | Check for Liquidated Damage (IRS Form 1099): |
|---|---|---|
| Allen, Vickie | $ 227.34 | $ 227.34 |
| Andrews, James | $ 257.63 | $ 257.63 |
| Andrews, Jeffery | $ 1,204.61 | $ 1,204.61 |
| Barkley, Andrew | $ 664.52 | $ 664.52 |
| Braswell, James | $ 679.27 | $ 679.27 |
| Brice, Dravius | $ 95.34 | $ 95.34 |
| Brown, Melissa | $ 1,348.60 | $ 1,348.60 |
| Caldwell, Deairius | $ 217.57 | $ 217.57 |
| Callahan, Jerry | $ 24.50 | $ 24.50 |
| Chatman, Iesha | $ 1,456.00 | $ 1,456.00 |
| Cole, Robert | $ 69.86 | $ 69.86 |
| Cosper, Kayla | $ 831.39 | $ 831.39 |
| Cruz, Guillermo | $ 2,101.25 | $ 2,101.25 |
| Dawson, Roderick | $ 1,262.28 | $ 1,262.28 |
| Dennis, Decorien | $ 304.14 | $ 304.14 |

---

[1] The amount of alleged unpaid overtime was calculated by multiplying the following: (1) the employee's average rate of pay across the relevant time period (August 10, 2018 until December 1, 2021); (2) the overtime multiplier of 1.5; (3) the amount of weeks of employment the employee worked during the relevant time period minus the sixteen weeks the employee was furloughed during COVID-19, if applicable; and (4) the decimal value of 27 minutes, i.e. Plaintiff's estimate for the amount of overtime owed per week.

| Name | | Amount | | Amount |
|---|---|---|---|---|
| Diaz, Clementina | $ | 1,207.54 | $ | 1,207.54 |
| Draggs, Antonio | $ | 72.52 | $ | 72.52 |
| Driver, Darriel | $ | 1,741.97 | $ | 1,741.97 |
| Dumas, Jamaha | $ | 655.37 | $ | 655.37 |
| Ellis, Dalton | $ | 129.73 | $ | 129.73 |
| Elsby, Willie | $ | 1,099.86 | $ | 1,099.86 |
| Foster Jr, David L. | $ | 9.08 | $ | 9.08 |
| Gaines, Shannon | $ | 1,587.99 | $ | 1,587.99 |
| Garner II, Jimmy | $ | 1,796.47 | $ | 1,796.47 |
| Hall, April | $ | 907.54 | $ | 907.54 |
| Harris, Breanna | $ | 524.65 | $ | 524.65 |
| Harris, Sharon | $ | 176.01 | $ | 176.01 |
| Johnson, John | $ | 1,609.96 | $ | 1,609.96 |
| Jones, Johnny | $ | 295.54 | $ | 295.54 |
| Lawrence, Travis | $ | 830.16 | $ | 830.16 |
| Lewis, Lena | $ | 1,456.00 | $ | 1,456.00 |
| Little, Shamarcus | $ | 1,391.06 | $ | 1,391.06 |
| Lopez, Raquel | $ | 1,540.85 | $ | 1,540.85 |
| Maines, Tarrance | $ | 270.87 | $ | 270.87 |
| Mann, Sheldon | $ | 1,361.73 | $ | 1,361.73 |
| May, Deborah | $ | 581.12 | $ | 581.12 |
| McClendon, Bready | $ | 95.54 | $ | 95.54 |
| Meacham, Dalton | $ | 106.13 | $ | 106.13 |
| Mitchell, Michelle | $ | 314.42 | $ | 314.42 |
| Molina, Apolonia | $ | 1,202.55 | $ | 1,202.55 |
| Moon, Morris U. | $ | 27.50 | $ | 27.50 |

| | | | | |
|---|---|---|---|---|
| **Moreland, Emmett** | $ | 1,488.47 | $ | 1,488.47 |
| **Morgan, Jessika** | $ | 91.95 | $ | 91.95 |
| **Nicholson, Tonya** | $ | 44.70 | $ | 44.70 |
| **Riddle, Jasmine** | $ | 90.75 | $ | 90.75 |
| **Thompson, Debbie** | $ | 502.27 | $ | 502.27 |
| **Thurman, Wali** | $ | 350.40 | $ | 350.40 |
| **Vickerstaff, Michael** | $ | 1,395.01 | $ | 1,395.01 |